UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X
:
YUNGBAEK JEON, :
:
Plaintiff, :
:
-against- :   **REPORT AND**
:   **RECOMMENDATION**
:   1:18-cv-2612 (NGG)(PK)
RAFAEL RILEY and MISHKA BEVERAGES, :
:
Defendants. :
:
---------------------------------------------------------------------- X

**Peggy Kuo, United States Magistrate Judge:**

On April 9, 2018, Plaintiff Yungbaek Jeon filed a Complaint (Dkt. 1) seeking to recover damages for injuries arising from a December 13, 2017 accident in which a vehicle driven by Defendant Rafael Riley and owned by Defendant Mishka Beverages hit his car.[1] (*Id.* ¶ 19.) The Complaint was drafted and filed by Plaintiff's counsel, Andrew Park, P.C. (the "Park Firm"). (*Id.*) On September 12, 2018, Jed Kirsch, of the law firm Napoli Shkolnik, PLLC (the "Napoli Firm"), appeared on behalf of Plaintiff. (Dkt. 12.) The parties arbitrated their dispute, and, on September 5, 2019, an award was issued. (Dkt. 36.) Thereafter, the parties agreed to settle the case and filed a stipulation of discontinuance on November 15, 2019 (Dkt. 39), which was so ordered on November 19, 2019 (Dkt. 40).

On July 16, 2020, the Park Firm, which had not moved to withdraw as counsel, filed a motion for a charging lien (the "Motion," Dkt. 41) seeking 75% of the fees obtained by the Napoli Firm as a result of the settlement. (*Id.* at 4.) It also sought reimbursement of costs in the amount of $502. (*Id.*)

---

[1] The Complaint alleges that the vehicle was operated by "John Doe." (Compl. ¶ 19.) Defendants clarified during the initial conference that Rafael Riley was the driver. (June 7, 2018 Min. Entry.)

1

On July 20, 2020, the Honorable Nicholas G. Garaufis referred the Motion to the undersigned.

For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted in part and denied in part.

## **BACKGROUND**

The Park Firm filed the Motion on July 16, 2020. (Dkt. 41.) It "seek[s] an Order, pursuant to Judiciary Law §475, apportioning the legal fee between incoming attorneys, [the Napoli Firm], and the outgoing attorney, [the Park Firm], and compelling the [Napoli Firm] to pay a disbursement fee to" the Park Firm. (*Id.* at 1.) Specifically, the Park Firm "requests that the Court award seventy five (75%) percent of attorneys fees to [the Park Firm], based upon the work performed between the incoming and outgoing attorneys." (*Id.* at 4.) The "disbursement fee" is comprised of $210 for filing the summons and Complaint in New York State Supreme Court, Queens County, $242 for service of process, and $50 for "Copying/Mailing." (Dkt. 41-16; Dkt. 46.)

The Park Firm was retained by Plaintiff on December 18, 2017 to bring a personal injury action against Defendants. (Dkt. 41 at 1; Dkt. 41-1.) Plaintiff "substituted" the Napoli Firm for the Park Firm "on or around September 5, 2018." (Dkt. 41 at 2.) In the nine months during which the Park Firm represented Plaintiff, it billed 21.5 hours. (Dkt. 44-1.) The billed work included: "preparing a MV-104 accident report;" requesting and obtaining information from Defendants' insurance carrier; preparing, filing, and serving the Complaint; reviewing Defendants' verified answer and initial disclosures; obtaining and reviewing Plaintiff's medical records; executing and filing a proposed initial scheduling order; drafting and serving Plaintiff's initial disclosures and supplemental disclosures; appearing at the initial conference; and responding to some of Defendants' discovery requests. (Dkt. 41 at 1-2.)

The Napoli Firm filed its opposition to the Motion on August 11, 2020. ("Opposition," Dkt. 42.) It argues that the Park Firm does not have a "valid claim for attorneys fees" because it "was

2

discharged for cause," and it refused to turn over its file, even though the Napoli Firm offered to reimburse its expenses once the file was received. (*Id.* at 1.) The Park Firm's "refusal" to "provide [the Napoli Firm] with [its] file caused a delay of nearly two months" from when it was retained in July 2018. (*Id.*) When the Napoli Firm "re-created [the] file," it found that "a great deal of discovery remained outstanding." (*Id.* at 2.)

The Napoli Firm also sets forth the work that it performed in this matter. It defended Plaintiff's deposition, took Defendant Riley's deposition, responded to written discovery demands, and arranged for Plaintiff to undergo Defendants' medical examination. (*Id.*) After a settlement conference was canceled by the Court and the parties participated in two unsuccessful mediations, the Napoli Firm worked with defense counsel to prepare and file the joint pretrial order and engaged in expert discovery. (*Id.*; *see also* Dkt. 32.) The parties participated in non-binding arbitration, and, on September 5, 2019, the arbitrator issued a decision in Plaintiff's favor. (*See* Dkt. 42 at 2; *see also* Dkt. 36; Sept. 5, 2019 Min. Entry.) Defendants offered to settle this case for the amount of the arbitral award, and Plaintiff eventually accepted. (Dkt. 42 at 3; *see also* Dkt. 38.) While Plaintiff was considering the settlement offer, the Napoli Firm prepared for trial. (Dkt. 42 at 3.)

In further support of the Motion, the Park Firm argues in its Reply that the "assertion that [it] was discharged for cause should be disregarded as the assertion is not substantiated by Plaintiff's affidavit or any other admissible evidence." (Dkt. 43 at 1.) Even if the Napoli Firm's stated reasons for the Park Firm's termination are accurate, the Park Firm maintains that these statements are not sufficient to establish that it was terminated for cause as "'general dissatisfaction with an attorney's performance or a difference of opinion between attorney and client does not establish that the attorney was discharged for cause absent some evidence that the attorney failed to properly represent the client's interest.'" (*Id.* at 1-2 (quoting *Greenberg v. Gross Island Indus., Inc.*, 522 F. Supp. 2d 463, 467 (E.D.N.Y. 2007).) Because "the record is clear that [the Park Firm] diligently prosecuted the case and

3

is devoid of any neglect or significant breach of duty," it "is entitled to enforce a charging lien." (*Id.* at 3.) As for the file that was not turned over, the Park Firm maintains that the Napoli Firm "merely had to forward a disbursement check to" its office "in order to review the legal files." (*Id.*)

Although both firms requested a hearing on the Motion (Dkt. 42 at 3; Dkt. 43 at 4), the undersigned finds that the Motion can be resolved based on the parties' written submissions.

## DISCUSSION

### I. Whether the Park Firm is Entitled to a Charging Lien

"New York Judiciary Law § 475 governs attorneys' charging liens in federal courts sitting in New York." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998). Section 475 provides, in relevant part:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

"Under New York law, an attorney dismissed without cause is entitled to liens in his favor to secure payment of reasonable fees and costs incurred prior to the date of substitution of counsel." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 147 (2d Cir. 1998); *see also Cruz v. Olympia Trails Bus Co.*, No. 99-CV-10861 (JSR)(HB), 2002 WL 1835440, at *4 (S.D.N.Y. Aug. 8, 2002) ("It is well-settled under New York law that an attorney loses his right to enforce a charging lien if the attorney withdraws or is discharged for cause." (quotation, citation, and alteration omitted)). "Courts typically find a discharge 'for cause' where there has been a significant breach of legal duty." *Allstate Ins. Co. v. Nandi*, 258 F. Supp. 2d 309, 312 (S.D.N.Y. 2003).

The Napoli Firm argues that the Park Firm was terminated because it "was not responsive to [Plaintiff's] inquiries concerning the progress of the case" and Plaintiff's "case was not getting the full

4

attention and efforts of Mr. Park's office." (Opp. at 1.) However, this is not sufficient to constitute cause. *See, e.g., Gurry v. Glaxo Wellcome, Inc.*, No. 98-CV-6243 (DC), 2000 WL 1702028, at *1-2 (S.D.N.Y. Nov. 14, 2000) (finding that the plaintiff did not terminate her attorneys for cause even though she contended that the attorneys "were often unavailable," "gave conflicting [legal] advice . . . , and she was fired" as a result of a letter the attorneys wrote); *Casper v. Lew Lieberbaum & Co., Inc.*, No. 97-CV-3016 (JGK)(RLE), 1999 WL 335334, at *6 n.5 (S.D.N.Y. May 26, 1999) (clients "expressed concern" that depositions were not yet conducted and "also questioned the fact that they had not received much in the way of correspondence from their counsel or notice of any kind as to the status of the case or the plan for the future"; "[w]ithout more, this simply does not constitute cause").

Accordingly, the undersigned finds that the Park Firm is entitled to a charging lien.

## II. Amount of the Charging Lien

In fee disputes between outgoing and incoming attorneys, the outgoing "attorney may elect to receive compensation immediately based on quantum meruit or on a contingent percentage fee based on his or her proportionate share of the work performed on the whole case." *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 658 (N.Y. 1993) (citation omitted). The Park Firm has requested a percentage of the Napoli Firm's contingent fee. (*See* Dkt. 41 at 4.)

"In assessing an attorney's proportionate share, courts consider the following factors: the time and labor spent by each, the actual work performed, the difficulty of the questions involved, the skills required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to a resolution." *Cruz*, 2005 WL 3071473, at *3 (quotation and citation omitted). "There is no formula or bright-line rule that can be applied." *Id.* at *5.

The Park Firm's argument that it is entitled to a charging lien rests almost entirely on the work that it performed, although it does assert, without any explanation, that its work was effective in helping to bring the matter to a resolution. (*See* Dkt. 41 at 3 ("Over the course of representation of

5

Plaintiff, your undersigned's office provided various services and initial legal work that undeniably served as a foundation for the favorable outcome (i.e. settlement) in the underlying action.").) The Park Firm provides no information about the difficulty of the questions involved, the skills required to handle the matter, or the skills and experience of the attorneys handling this matter.

The information provided is insufficient to justify the 75% of the attorneys' fees that the Park Firm seeks. Over the course of approximately nine months, the Park Firm spent just 21.5 hours investigating Plaintiff's case, filling out a few forms, drafting and filing a four-page complaint, responding to some initial discovery, and appearing at the initial conference. (*See* Dkt. 41 at 1-2; Dkt. 44-1.) In comparison, over the course of approximately one year and three months, the Napoli Firm spent over 1,700 hours completing discovery, preparing for and attending multiple mediations and settlement conferences, preparing for and attending a successful arbitration, filing the joint pretrial order, and preparing for trial. (*See* Dkt. 42 at 2-3; Dkt. 42-1.) Although the Park Firm commenced this action and performed some preliminary work on it, the undersigned cannot conclude that the Firm was "effective" in bringing the matter to a resolution given the Complaint's barebones nature, the minimal amount of time the Park Firm spent on Plaintiff's case, and the large amount of work the Napoli Firm performed after it was retained. Furthermore, the instant action is a fairly typical motor vehicle accident that did present any difficult or unique questions of law or fact.

Counsel who have performed a similar division of work have been awarded five percent of the contingency fee. For example, in *Rosado v. Alhati*, 109 A.D.3d 753 (N.Y. App. Div. 2013), outgoing counsel claimed to have "had many conversations with plaintiffs," although it did not provide "any detail as to when such conversations took place or how much time was expended." *Id.* at 754. It also "made no efforts to go forward with any depositions during the 3 ½ years that it had the file, or to investigate any defendant other than the City of New York." *Id.* By contrast, incoming counsel there expended approximately 670 hours on the matter, "demonstrating that the firm aggressively litigated

6

on behalf of plaintiffs," and "conducted extensive depositions," obtained a witness statement, obtained medical and school records, hired experts, conducted a ten-day trial, and successfully settled the case. *Id.* The court in that case held that outgoing counsel was entitled to five percent of the contingency fee, which the First Department upheld on appeal. *See id.* at 753.

Similarly, in *Buszko v. City of New York*, 118 A.D.3d 464 (N.Y. App. Div. 2014), outgoing counsel prepared and filed a bill of particulars, prepared and filed discovery demands and responses, obtained medical records, and retained two experts. *Id.* at 464. Incoming counsel "performed the lion's share of the work," representing the plaintiff at an administrative hearing, commencing the litigation, preparing a summary judgment motion, continuing discovery, and successfully settling the action through a mediation. *Id.* The Supreme Court awarded outgoing counsel two and a half percent of the fees, which the First Department raised to five percent. *See id.* at 464-65; *see also Mason v. City of New York*, No. 13-CV-7139 (PKC), 12-CV-5885 (PKC), 2016 WL 2766652, at *1, *4-5 (S.D.N.Y. May 12, 2016) (finding that outgoing counsel—who had a consultation with plaintiff, signed a retainer agreement, analyzed potential claims, investigated some of the facts, obtained the relevant records, engaged an outside investigator, and drafted and filed a complaint—was entitled to five percent of the contingency fee); *Shabazz v. City of New York*, 942 N.Y.S.2d 89, 90 (N.Y. App. Div. 2012) (reducing outgoing counsel's share of the contingency fee to five percent when it served the notice of the claim on the municipal defendants, obtained the plaintiff's medical records, represented the plaintiff at an administrative hearing, and commenced the action by filing the complaint, because "the record show[ed] that the incoming attorneys performed significantly more work," including conducting discovery, retaining experts, selecting a jury, representing the plaintiff in a ten day trial, and negotiating a settlement on the plaintiff's behalf); *Brown v. Governele*, 29 A.D.3d 617, 618 (N.Y. App. Div. 2006) (holding that outgoing counsel was entitled to five percent of the contingency fee when it commenced the action but incoming counsel filed the amended complaint, conducted discovery, opposed a motion

7

for summary judgment, and settled the case during mediation); *Podbielski v. KMO 361 Realty Assocs.*, 6 A.D.3d 597, 597-98 (N.Y. App. Div. 2004) (awarding the plaintiffs' incoming counsel five percent of the contingency fee when it "offered assistance and advice to appellate counsel during the course of [the defendants' unsuccessful] appeal" and "arranged" for the judgment's collection, while the outgoing counsel commenced the action, conducted discovery, successfully moved for summary judgment, and represented the plaintiffs at the successful trial).

Accordingly, the undersigned respectfully recommends that the Park Firm be awarded a charging lien of five percent of the fees obtained by the Napoli Firm.

### III. Recuperation of Costs

In addition to the charging lien, the Park Firm seeks to recuperate $502 in out-of-pocket expenses for the filing fee, service of process, and photocopying/mailing. (Dkt. 41 at 4; Dkt. 41-16; Dkt. 46.)

Although not characterized as such in the Motion, the Park Firm appears to have asserted a retaining lien on its client's file, because it conditioned release of Plaintiff's file on the Napoli Firm's payment of $502. For its part, the Napoli Firm objects to the Park Firm being awarded these expenses because the Park Firm never released the file despite being told it would be paid upon receipt of the file. (Dkt. 42 at 1.)

A retaining lien attaches in common law when an attorney has "possession in his or her professional capacity" of "the papers, documents and other personal property of the client." *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 262 n.3 (2d Cir. 2004) (quotation and citation omitted). The lien "is extinguished only when the court, which controls the functioning of the lien, orders turnover of the file in exchange for payment of the lawyer's fee." *Bretillot v. Burrow*, No. 14-CV-7633 (JGK)(MHD), 2015 WL 5306224, at *8 (S.D.N.Y. June 30, 2015), *R&R adopted*, 2015 WL 6455155 (S.D.N.Y. Oct. 26, 2015) (quotation and citation omitted).

8

After its discharge, the Park Firm had a retaining lien on Plaintiff's file, entitling the firm to payment for its costs before being obliged to turn over the file. *See Cosgrove v. Tops Mkts., Inc.*, 39 F. App'x 661, 664 (2d Cir. 2002) ("When a client discharges an attorney retained on a contingency basis without cause prior to the completion of his services, the attorney is entitled to . . . a retaining lien on the client's file until his disbursements have been fully paid and, as a general rule, his fee has been determined . . . ." (citation omitted)). "Absent exigent circumstances including, for example, when the client makes a clear showing of need for the withheld papers and that prejudice would result from denial of access, a court should not require relinquishment of papers subject to a retaining lien." *McDermott v. Great Am. Alliance Ins. Co.*, No. 2-CV-607 (NAM)(DEP), 2006 WL 2038452, at *2 (N.D.N.Y. July 18, 2006).

The Napoli Firm contends that the Park Firm's failure to turn over the file when it was first retained resulted in "a delay of nearly two months." (Dkt. 42 at 1.) However, the Napoli Firm did not seek to compel the release of Plaintiff's file from the Park Firm by invoking exigent circumstances, choosing instead to reconstruct the file. *See Brown Rudnick, LLP v. Surgical Orthomedics, Inc.*, No. 13-CV-4348 (JMF), 2015 WL 1097342, at *3 (S.D.N.Y. Mar. 12, 2015) (explaining that to show exigent circumstances, there must be "a 'clear showing'" of the need for the client's property, the prejudice that would result without it, and the inability to pay the fees sought or post a reasonable bond (quoting *Pomerantz v. Schandler*, 704 F.2d 681, 683 (2d Cir. 1983))); *see also Ruta & Soulios LLP v. Litman & Litman, PC*, No. 603322/03, 2005 WL 2838124, at *5 (N.Y. Sup. Ct. Sept. 12, 2005) (rejecting as "without merit" defendants' argument that the outgoing attorney was not entitled to fees and costs "because he 'never transferred the client's file' and because '[the incoming attorney] never benefited from [the outgoing attorney's] work'"). Thus, whatever delay may have resulted from the need to reconstruct the file at the outset of representation by incoming counsel does not affect whether the Park Firm is entitled to have its costs reimbursed at the end of the litigation.

Notwithstanding counsel's disagreement about whether payment of costs or release of the file should have come first, the fact remains that at the end of the litigation, expenses reasonably incurred by counsel, especially those necessary to begin the litigation, should be reimbursed. *See In re McCray, Richardson, Santana, Wise, & Salaam Litig*, No. 3-CV-9685 (RLE), 2015 WL 1500206, at *6 (S.D.N.Y. Mar. 31, 2015) (awarding the outgoing attorney the "reasonable" costs that it incurred while representing its former client); *Ruta & Soulios LLP*, 2005 WL 2838124, at *6 ("conclud[ing]" that the outgoing attorney was entitled to recover the "reasonable value" of his costs and disbursements). Accordingly, the Park Firm is entitled to recover certain reasonable costs incurred during the course of its representation of Plaintiff.

On November 19, 2020, the Park Firm submitted receipts to support some of the costs it incurred in this litigation. (*See* Dkt. 46.) These include the receipt for filing the summons and complaint with the New York Supreme Court for $210 (Dkt. 46-1) and the receipts for service of process for $242 (Dkt. 46-2). These costs are reasonable and should be reimbursed by the Napoli Firm.

As for the Park Firm's request for photocopying costs, "reimbursement is not allowed for items that constitute routine office overhead." *Bauta v. Greyhound Lines, Inc.*, No. 14-CV-3725 (RER), 2019 WL 8060181, at *5 (E.D.N.Y. June 17, 2019) (citation omitted). However, reimbursement of photocopying costs may be appropriate "where 'copies are necessarily obtained for use in the case.'" *Id.* (quoting 28 U.S.C. § 1920(4)). The party seeking reimbursement "must make clear what documents were copied, how many copies were made, the cost per page charged for copying, and why the copies were necessary." *Robison v. City of New York*, No. 5-CV-9545 (GEL), 2009 WL 3109846, at *11 (S.D.N.Y. Sept. 29, 2009). In response to the Court's order directing the Park Firm to submit proof of its photocopying costs, the Park Firm stated that it "is not in possession [of] any proof of its miscellaneous costs (i.e. receipts and invoices for copying and postage) in connection with the subject

10

accident." (Dkt. 46 at 2.) Without proof or details in support, the requests for photocopying and mailing costs are denied in their entirety. *See Bauta*, 2019 WL 8060181, at *6 (denying the plaintiff's requests for reimbursement of photocopying expenses because "general photocopying are not taxable" in a car accident case and the plaintiff failed to provide "documentation of charges for copying," leaving the court to "surmise how the [p]laintiff arrived at" the copying charges sought).

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Park Firm be granted a charging lien in the amount of five percent of the contingency fee received by the Napoli Firm. The undersigned also respectfully recommends that the Napoli Firm reimburses the Park Firm $452 to cover the costs for initiating the underlying lawsuit in New York Supreme Court and serving the summons and complaint on Defendants. Furthermore, the undersigned respectfully recommends that the Park Firm's request for reimbursement for photocopying and mailing be denied.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         November 23, 2020